May it please the Court, my name is Ben Cooper, I represent Julie Collins and Rob Ryan. I'd like to reserve, if possible, two minutes for rebuttal. This case is at the confluence of two rivers of precedent, two bodies of law that sustain arbitration as a viable means of resolving disputes under law. The first principle is that when it comes to arbitration, collateral estoppel is not a law like any other law. It has a special role, and courts have reserved a special level of review of decisions as to collateral estoppel in the arbitration setting. The second principle is that for any law, even less fundamental than collateral estoppel, courts vacate awards where, as here, arbitrators acknowledge what the law is, but then depart from it based on their own notions of right or wrong, practicality and fairness, industrial justice, whatever you want to call it. And when courts and when arbitrators depart from the law on the basis of a self-directed, oh, it doesn't apply in arbitration principle, courts should be particularly wary, particularly when that principle is not recognized anywhere in the law. First, as to the issue of collateral estoppel, this is a fund ‑‑ this is not a law like any other law. D.R. Horton cites in Supplemental Authority a case dealing with a fine point of California statutes on attorney's fees. This is not like that. The Supreme Court has declared that collateral estoppel is a fundamental precept of common law adjudication.  But here we're talking offensive nonmutual collateral estoppel, right? That's correct. All right. Let me just ask you this, though. What is the law of the Ninth Circuit on this? The law of the Ninth Circuit in what respect? Well, I guess first ‑‑ It's called a Parkland hosiery. All right. Is it really clear in the Ninth Circuit as opposed to say, like, is the Sixth Circuit spoken more on this issue than, say, the Ninth Circuit? Well, on the question of what is the review of arbitrators, other circuits have spoken. In terms of ‑‑ the only decision really dealing with arbitrators is Chiron, where Judge Nelson was on the panel. And in Chiron, the Court made clear that it was concerned with who decides the collateral estoppel effect of a prior arbitration. And the Court carefully distinguished judgments confirming arbitration awards from the kind of judgment we have here, where there is a judgment on the merits issued by a district court in its own jurisdiction. So it's very difficult. Let me ask you a question. We give courts the discretion in applying collateral estoppel. Why didn't the arbitrators in this case have the discretion not to apply collateral estoppel? Because you're under Parkland hosiery, that's a ‑‑ it's a cabined discretion. The Court said that because of the nature of nonmutual offensive collateral estoppel, there are certain areas where the second forum has an amount of discretion. The Court laid those out. For example, where there are multiple conflicting decisions, that is, the defendant wins the first 25 cases, loses the 26th, the second forum has the ability to say, well, we don't think it would be fair in that context to apply it. That's not what happened here. They have the ability to compare the two forums and say, well, was the first forum impaired in some way? Were there procedures in the second not available in the first? The Court carefully said where there was jurisdiction, where there was discretion. That's not what the arbitrators did in this case. They did not have discretion to say, we refuse to find that the district court's judgment was final because there's an appeal pending. That's been settled law for 100 years. There are no exceptions. The district court recognized that that was wrong. Your Horton doesn't need an argument. Kagan. Assuming that they were wrong, what is there to show that the arbitrators knew that they should have applied collateral estoppel and simply disregarded that duty? Isn't that under robier burden, to prove that they knew that they were not following the law? No, Your Honor. And expressly did it. All right. No, I would disagree, Your Honor. I don't think it's what the Court called a mens rea analysis, that they understood that they were wrong. No, it has to be a manifest disregard for the law. Right. All it has to be is manifest. Manifest disregard for the law. You can't disregard a law manifestly unless you know it. That's correct. And they did know what the law was. They acknowledged what the law was if they were in a court. They said we they recited Robie v. Five Platters, this Court's precedent. And they said we understand that there would be a compelling case for collateral estoppel if this were a court, but we're arbitrators and so we're going to do what we want, which is we think it's unfair to apply collateral estoppel to hold that opinion as judgment. Well, where in the record did the arbitrators exhibit their awareness of the applicable law? They said it, Your Honor, in their decision on collateral estoppel. They say we acknowledge that there would be a compelling case for collateral estoppel if this were a court of law, if we were in a court of law. Because it had been cited, Robie v. Five Platters. But they said because we're in an arbitration and this would become final, we think practicality and fairness dictate a different result. There was no argument about what the law was. There was no law in the Ninth Circuit on that point with respect to arbitrators. There was with respect to the courts. Your Honor, there is no exception for arbitrators. There has never been. What this says is if an arbitrator comes up and says, well, there's no case that we've heard saying that this piece of substantive law doesn't apply to us because we're arbitrators, it's particularly suspicious when it's self-directed. And I think the more fundamental question is whether you even apply a manifest disregard standard or the same kind of standard when it's collateral estoppel. There's a long line of precedent from other circuits. This Court has not dealt with it, I understand. In other circuits, not this circuit. This circuit has never addressed it, so it's an issue of first impression of how to deal with the collateral estoppel effect of a charge. Which raises the question as to what law did they disregard if there was no law in this circuit? Your Honor, the law is that the finality of a Federal judgment is not affected by taking of appeal, period, end of story. There are no exceptions. There are no exceptions in any setting. The law, according to Wright and Miller, has been settled for over 100 years. And lest there be any confusion, in Arizona, where all three arbitrators were lawyers and one was a judge, that's also been the law. But it's a question of first impression as to whether that applies in arbitration. Is that not correct? Well, Your Honor, almost everything is an issue of first impression when one asks, gee, does this substantive law apply in arbitration? When arbitrators start saying, well, you said to me this is the law for 100 years. Is there a law showing that I have to apply it as an arbitrator? If we start going down that route and allow arbitrators to say the law doesn't apply to me because I'm an arbitrator, not a court, then we've opened the door, we've blessed every kind of manifest disregard. So if they would have said it's discretionary whether we apply the offensive non-mutual collateral estoppel and we're choosing not to, you'd be out of luck? If they chose it on a ground as to which they had discretion, that's correct. If they had said for some one of the Parkland and Hosiery reasons where they had discretion, then we'd probably be out of luck. That is the kind of nuance. If, that is, we'd be out of luck if they were wrong and the Court applied a manifest disregard. A series of circuits that we think this Court should follow have said that collateral estoppel is different because of its fundamental principle of jurisprudence and because it involves the Court's ability to protect the integrity of its own judgment. Those courts have recognized a plenary authority to refute decisions, either decide the decisions of the first instance or, at the very least, after the arbitrators have taken a first shot, to review it on a different standard because it's so fundamental and it involves the integrity of the federal court judgment. And I would say that's particularly important in the collateral estoppel context because here you have a federal court deciding an issue with a full panoply of procedures, in this case a jury trial. The issues are decided. The arbitrators that expressly decline, in their own words, to decline to apply collateral estoppel to issues decided in the Hickox trial, acknowledging those were issues decided in the Hickox trial, in order to decide it themselves in a proceeding which, as the Court noted in the Chiron, is known for having relaxed procedures, more expeditious. The notion that ---- I can see, though, where a jury would decide the type of issues because I guess the jury found punitive damages, which eventually got remitted, and then there was the $30,000, 30,000 shares, correct? That's correct. And they also found, I think, less in damages to the employees, but the overall judgment was greater, right? I'm sorry, the overall judgment? With the jury verdict. The numbers on the jury verdict weren't quite as ---- It was like 87,000. It was approximately 80,000 on the $30,000 share claim for Tom Hickox. That's a mathematical computation, that each person's prorata share of the stock options times the closing price. So his was 80,000. The same exhibit established what the numbers would have been for Julie Collins and Rob Ryan. It's approximately 50,000 for Julie Collins, approximately 70,000 for Rob Ryan. Those would have been the compensatory damages on the claim. But again ---- I can see where juries and arbitrators would decide this case differently, just because of what a jury panel is and what, you know, juries have a lot more employee-friendly people on them than arbitrators do. Well, Your Honor, we had a federal judge reviewing this evidence extensively, and Judge Bolton found in Hickox's case that there was clear and convincing evidence to support that verdict. And in her analysis of the evidence, she indicated the group nature, the group dynamic. And it's not for the court. And in a variety of contexts for the court to say, we're not going to look at whether a judge and a jury would come out differently. When the court rules, in this case after a full trial, whether it's a bench trial or a jury trial, and decides the issue, arbitrators are not ---- just like courts, arbitrators can't say, well, that's a jury and we think we're smarter than juries. They're not allowed to do that. They don't have discretion anymore to say that that judge was wearing a blue shirt and I'm wearing a white shirt, and white shirts get to decide things differently. That's simply not an area of discretion. They have no more discretion to say that that judgment, as the district court noted, that that judgment wasn't final because the appeal was pending. There is no law allowing it. We think that's manifest disregard to create an arbitration exception to a firm, fixed rule for which there has been no contrary precedent for a hundred years. We think even if ---- that this Court shouldn't even apply manifest disregard standard because it's collateral estoppel. And this, the Federal court should be undertaking an independent plenary review to say is this wrong, particularly because here the mistake of law, the manifest disregard of the law, was a self-directed, it doesn't apply to arbitrators, that kind of self-serving. It wasn't quite that. They didn't say we were classed by ourselves, we don't pay attention to what Federal  And so I would argue, Justice Scalia, that the question of practicality and fairness suggests a different conclusion in this binding arbitration, however, in which the estoppel, if now ordered, cannot later be undone if the Hickox judgment is later reversed. Now, they may have been wrong about that. But was that manifest disregard of the law? I think it was, Your Honor, where they simply went off on their own notions of practicality and fairness. When they're in an area where they had no discretion, it was a firm, fixed rule. That's what arbitration is all about. You get arbitrators because they have their own concepts of practicality and fairness. That's why you arbitrators don't have to be judges. They can be businessmen. They can be contractors. They can be securities brokers. Your Honor, as the district court analyzes, that may be true under the California system. That is not true under the Federal Arbitration Act. Under the Federal Arbitration Act, they are bound to follow law. They are not allowed to go off on notions of equity and fairness where the law commands otherwise. And that's why we have a manifest disregard standard. If arbitrators were free to go off on their own notions of right and wrong, the manifest disregard would not be a reason for overturning their judgments. Kennedy. But if there is an error about the inability to undo the Hickox judgment, does that indicate a manifest disregard? Yes, Your Honor. Why? When an arbitrator says, I understand what the ruling is, but I'm what the law is. But because I'm an arbitrator, I decide that a different rule should apply because this is arbitration. We're like two shifts passing in the night. I think that is manifest disregard. I don't think you think that error is manifest disregard. I think that manifest disregard, for purposes of argument, is a higher standard. It means a conscious knowledge of what the law is and a choice directly opposite thereto. That's not just error. He may have been an error that the Hickox judgment could not later be reversed and undone. And he may be an error that the arbitration award could not later be undone. But is that manifest disregard of the law, or is that just the risks that one takes when one goes to arbitration? I don't think it's a risk, Your Honor. I think an error of law was where, for example, the issue hadn't been briefed at all and there was no precedent, or where there was conflicting precedent and the arbitrator chose the wrong result that the court later decided was not the way the law should go, or where there was some minor detail that had not been fleshed out. Here you had a firm rule that you cannot affect the finality of a judgment by taking an appeal. And again, I don't think that the correct standard is manifest disregard for an issue like collateral estoppel. Kennedy. Listen to what he says. He says the Hickox judgment cannot later be undone, and therefore, practicality and fairness should apply as he did it. Now, what he's saying is that if we agree with the findings of the Hickox trial court and award damages to these plaintiffs in arbitration, and then Hickox gets reversed, these people are going to be awarded on something which they shouldn't have been awarded on because that was reversed. Your Honor, at this time, when we were before the arbitrators, the Hickox verdict had come down and the initial judgment had been entered. We were asking not to go to arbitration. It was Horton that was asking to go to arbitration. That was an assumed risk on their part. That is, they were the ones pushing to go into that. But there's there's. Kennedy. Could the arbitrators reasonably have come to the conclusion that the Hickox verdict could not later be undone if it was used to award your party's damages, then that arbitration award would be based on what could later turn out to be an erroneous conclusion? There was, but, Your Honor, even if the Hickox, even if the arbitration award could not later be undone, that is not an exception. There is no law allowing an exception. And Wright and Miller discusses all this. They go through all the analysis. Do you stipulate that the arbitration award could not be undone? Your Honor, there are ways. They could have reached an agreement, come to us and said, let's hold open the finality  Go ahead with the arbitration. Hold open the award. There are a lot of mechanical ways to resolve that situation. We could have reached an agreement to allow a reopening of the arbitration in the event it reopened. Those weren't on the table at the time. The arbitrators gave us no chance. They didn't even call for a response on the court. Well, I'm more troubled by the fact that you say that manifest disregard is not the standard. Because it's collateral estoppel and other circuits have said that it is up to the courts, not the arbitrators, ultimately to decide the collateral estoppel effect of prior Federal court judgments. That is for the court to decide, not the arbitrators. And even where one lets the arbitrators take a first shot at it, if they make a mistake, whether it's manifest disregard or a simple error, the court should correct that. And numerous circuits have said that it is not ultimately an arbitrator issue, it's a court issue. Now ---- But this circuit has never held that yet. Is that correct? That's correct, Your Honor. As I said, it's an issue of first impression here. Therefore, I have difficulty in understanding why, then, it's manifest disregard of the law when this circuit has no law on that very issue. Your Honor, it's manifest disregard of the collateral estoppel issue. That is, it's manifest disregard of the law saying that collateral estoppel applies regardless of whether an appeal is pending of the prior judgment. But we think that's not the proper standard. The proper standard, whether it's an issue of first impression in this circuit or not, is that whether you even apply the manifest disregard standard to collateral estoppel. We urge the Court not to do that because this is a fundamental right, a fundamental precept. And the courts ---- this Court has long recognized since the Carpenter's case that where arbitrators violate ---- Can you give us a bit of time for rebuttal? Thank you. I'll just ---- Okay. Thanks. This Court long ago recognized in the Carpenter's case that where courts violate a fundamental, well-defined public policy, here the finality of judgments, that their orders will be set aside. And we think that should not be manifest disregard under the precedent from other circuits. I'll reserve my minute 20 for rebuttal. Thank you. Okay. Thank you, Mr. Cooper. Good morning, Your Honor. My name is Lonnie ---- morning, Your Honors. My name is Lonnie Williams. And along with Deanna Rader, I represent D.R. Horne's matter. Good morning. I agree with some comments made that the positions of the parties is like two ships passing in the night. They have come to you asking you to reverse and order the district court to enter a judgment that no other court has ever considered entering. Footnote ---- Let me just interrupt that argument. You argued in your briefs, and I assume you're arguing here, that arbitrators have the same type of discretion in applying collateral estoppel as the courts. But the courts are at least constrained by the factors set forth in Parklane posery. Now, surely the arbitrators do not have the discretion not to apply just because they didn't like the lower court judgment. So what ----  How are you cabining that discretion? If getting right to the point, I believe that not only is the law that there is discretion, because this court has reaffirmed that as late as January of this year when it issued its decision in the IBM matter, and it discusses that issue. I think when you put it with arbitration, you have discretion of the determiner of the collateral estoppel, the non-mutual. Then you have a review in arbitration, which this court has to say has to be manifest disregard. There is no reason or law that we would change that. So it's a higher burden than it would be for the trial court. Trial court, it would be discretion. Did they abuse their discretion? I think the question is, does the arbitrator abuse their discretion? Because when you're dealing with non-mutual, there are in Parklane and this court reasons the court can do after it finds the elements, even if we assume that. And in this case, Your Honor, I believe counsel has conceded that issue. Well, if the ---- my notes indicate that you're saying the question is, does the arbitrator abuse their discretion? That's a simple error of law. No, Your Honor. That's the issue at trial court, in the trial court. When you deal with arbitration and you're looking at whether their discretion was abused, they have more latitude because your review of arbitrator's decision is different. Well, why wasn't the arbitrator bound by the federal law to conclude that the judgment in Hickox v. D.R. Horton was final? Why weren't they bound by that? Your Honor, they were not. They may have been. That may have been the law. They made a decision, not that it wasn't, quote, final, in my opinion. I think what they said is, in light of the situation, I'm going to exercise my discretion and not apply it. Now, in this court, you can affirm that. And that's the way to affirm the district court for a lot of reasons. And I think counsel has really conceded the issue when he was asked if one of the factors in Parkland was present. Could they have exercised their discretion? Well, the one thing we all have to concede is one of the key factors discussed in the Supreme Court and discussed by this court as late as January of this year in the IBM case is when a plaintiff in these non-mutual situations takes a wait-and-see attitude, has the ability to join in the Hickox case and be bound by the same jury. In this case, it's undisputed. Before we sought arbitration, before the Supreme Court decision in Circuit City, we moved to consolidate the two cases. They fought tooth and nail, and the record is before you. The judge even said, well, what about collateral estoppel? What about this issue? In essence, giving them a warning under Parkland that if you take this attitude, this is not necessarily going to be beneficial. This court affirmed that or adopted or reaffirmed that earlier this year when it said that one of the factors that has to be considered is did the plaintiff have an incentive to adopt a wait-and-see attitude in hopes that the first action by another plaintiff would result in a favorable ruling. That, in and of, as counsel said, if one of the factors is there. So now we go back to the issue, do we look at this case solely based on what the arbitrator's ---- That's so unfair about taking a wait-and-see attitude. That's what the Supreme Court said, Your Honor, and that's exactly what this Court ---- If you had won the Hickox case, you would be arguing the other side of the table. No, because I could not have used it because they were not a party. It has no benefit to me. But the reason I'm saying that is because the Supreme Court said it and this Court adopted it because the language I just read from you is a quote from the January decision of this Court at 472 F. 3rd, 1072, when they talk about this very issue. So we start with discretion. This whole idea that this is a manifest disregard, it's a clear issue, I question the issue of having that standard met when there is discretion involved and then you have arbitration. I agree. It hasn't been decided by this circuit particularly, but they have decided the two issues. What is the standard on collateral estoppel? Is there discretion? Absolutely there is discretion. And there's a lot of other reasons that the arbitrators could have had based on this record for exercising that discretion. For example, the fact that they believed, right, wrong, or indifference, that they may not be able to undo something. That is discussed in Parkland. It's discussed regarding the problems in court. The Supreme Court said we can resolve that. There's all kinds of ways to deal with that. I don't know that you can resolve it in arbitration. Remember, the district court made a ruling below that she could not remand this back to the arbitrators. We asked her to. She said, no, once the arbitration is over, it's over. Why wouldn't that also apply? Or why couldn't the arbitrators reasonably believe that that would apply? Well, the arbitrators, at least in California, cannot be overruled unless there's actual corruption or they've gone outside the terms of their arbitration. Right. Is that what you're saying? They could rightly or wrongly have believed that an arbitration award entered on the Hickox judgment could in fact be undone. Exactly, because there was no law in this circuit on that subject, on that precise subject, dealing with arbitration and whether or not you could undo it. And so the arbitrators could have easily concluded that was a problem. You put that together with the manifest disregard standard plus their discretion. And I would point out that throughout their briefs, throughout their argument, counsel only today acknowledged any discretion on behalf of the fact finder, the trial judge or the arbitrator, in using this, despite the fact that this circuit has made it clear in case after case after case, including earlier this year, that it's there. Plus, as I said, he's conceded today at least if any of those factors were there, we may not be here. Now, we have to also keep in mind that Judge Silver never, never reached the issue that they are asking you to reach. For reasons I can't explain, she made it real clear in her footnote, too, that her issue was whether there was manifest disregard by the arbitrators refusing to hear the issue based on the appeal. She says, I take no position on whether or not they would have established or did establish the elements of collateral estoppel. So what the, what they're asking you to do is basically take this case on whole and make all those decisions. And I don't believe that's appropriate. But if you do, we've given you all of the factors based on these, this case's, this court's decisions that would have let the arbitrator reach the conclusion, whether it's. Can you respond to Mr. Cooper's argument that manifest disregard is not the standard of review here? I don't understand that argument in this circuit. In the Sand Marine case, which is not that long ago, they talk about it. They may not have used the words Judge Silver used, but they say it has to be more. And they discuss. More than what? More than an error. It has to be more. And so this circuit, in my opinion, has made it clear that that is the standard. They've discussed it. In the cases that they cite, and particularly it's the American, I may state the name wrong, it's two cases that they cite that somehow they say gets away from the, this circuit's definition of manifest injustice. The fact is, those they don't. All of those cases go back to the basic decision that this court made in Sand Marine decision in 1961. It has to be more. It has to be more than just error. And they talk about they have to know it, ignore it, and do it intentionally. What error, if any, do you concede was made here? I don't concede any error was made at the time because there was no law in this in an arbitration that you have to apply it, even pending appeal, because somehow it can get taken care of later. There was no law for them to look to that said, huh, if I make this decision and if the Hickox verdict is overturned, something can happen. And I submit to this court, when you look at Judge Silver's ruling on resubmitting it back to the arbitrators, as of that time she's confirming that they were right because she's confirming that once they're done, once they're done. Now, counsel says we could have agreed to something. Well, we could have done a lot of things like settle the case and we wouldn't have been here. I think all that's irrelevant. The fact of it is that I do not concede that they made any mistake, but if they did, it was what Judge Silver says. The mistake was in not hearing the issue fully and agreeing not to hear it without briefing on the appeal issue. It's not the mistake of not applying it, because we have a lot of other places to go. We've got to establish the elements. She did not do that. Judge Silver did not even touch that issue. We've got to go through that. We go through that in our brief. We go through that in our brief in pointing out all of the things that the arbitrators could have used their discretion to deal with. In fact, the Keating case and this case have a lot of similarities. You throw it out in the mud and it looks the same, but when you look at the specific elements, as this court did in Keating, it said, yeah, he did some bad things in this case, but they're different in allegations, and we've pointed that out, too, with respect to the Hickox, the third-party beneficiary theory that they had versus what they had in there and other things, especially when you're dealing with this type, this particular type of allegations of fraud. It's not like the UNICAO situation where you're dealing with an agreement. Here we're dealing with specific statements of Hickox on what his reliance was, and the reliance of the others had to be different, because Hickox was on the board, they all were not on the board, and so it's all different. So in order to get to where they want you to get, you have to ignore all of that. You have to assume the elements, the arbitrators would have found the elements were there. You have to assume, having found the elements of collateral estoppel, non-mutual, the arbitrators would have exercised their discretion, as this court has allowed them to do, and found that it should apply. And you have to do that faced with the objective finding that one of the factors that the Supreme Court and this court has found as a reason for the exercise of the discretion is the wait-and-see attitude of the plaintiff, which we have here when they oppose strenuously our motion to consolidate. That's sort of the opposite of what counsel says when they say, well, D.R. Horton wanted to arbitrate. Well, D.R. Horton had an agreement that paid the plaintiff's money, and part of it was arbitration. So we had a right to that. They did not have an obligation to agree to consolidation, but there's consequences for the position they've taken. And the Supreme Court and this court has said, you might lose your right to the benefit of non-mutual collateral estoppel. And all of that no judge has decided, because Judge Silver didn't do it. So what you're being asked to do is make all of those leaps, and I'm suggesting in light of the high standard that has to be applied to looking at what an arbitrator did, you come down to did the arbitrators manifestly disregard the law with respect to not applying non-mutual collateral estoppel in this case. That's really the issue. And for all of the reasons, the objective reasons that I've cited, including the wait-and-see attitude that this court adopted, that the Supreme Court has said is clearly a reason, in light of the lack of law on the subject of what would happen with that appeal. What would happen if there were a reverse? Would we be stuck? According to Judge Silver, we might be stuck. Maybe they wouldn't have found the elements. Maybe they wouldn't have found the elements based on all these arguments. All of those are discretionary matters, and all of those lead to the conclusion that they can't meet their standard. They can't meet their burden. Why wasn't Hickox subject to the arbitration clause? Hickox was. The problem was at that time, Your Honor, this circuit was not enforcing arbitration clauses in employment contracts. And by the time it was reversed, we were in a quandary because we had gone so far toward the trial in Hickox. It was really a financial. It was just too late. We already had setting. They were in front of two separate judges. We tried to resolve that by the consolidation because we wanted to put them all together and try one case. But you were trying to resolve it by consolidation of bringing these two plaintiffs into the Hickox action, not taking Hickox out and arbitrating. No, no, no, because, again, that was already pretty much down the road for trial, but we wanted one trial in terms of that. And certainly Judge Bolton had discretion of whether to consolidate. I'm only suggesting there's a consequence to that, and the consequences was clearly established at the time, and Judge Bolton even raised the issue to them. And you have the transcript in terms of the fact that this may be the consequence of their action in terms of that. They are a classic, this is a classic case for the non-applicability of this based on all of the discussions that have gone on over the years in this court and in the Supreme Court of certain circumstances why you don't apply it. And I'm even assuming you get there by establishing the elements. I could go on, but I don't think there's anything that I haven't said in my brief. Unless there's any question, I'm not going to. Let me ask you one open-ended question, and I realize you don't think this is the issue in this case. Other circuits have held that arbitrators like district judges are required to give preclusive effect to prior Federal judgments. Why shouldn't that be the rule in this circuit? It shouldn't be the rule in this circuit because it would change this circuit's clearly stated rule on the applicant. Well, if we're talking about non-mutual collateral stop-loss, if we are, that rule would change the law in this circuit. Why shouldn't it be the discretion if that were the rule? Because this Court has always said that, you know, there is broad discretion given to the trial courts to take in all factors in making this decision. Indeed, I'm just saying, why wouldn't the same rule apply to arbitrators? Well, I think I've never suggested that the rule set forth in this Court. Say, like, do you like the Sixth Circuit? Well, but I don't think the Sixth Circuit is as clear as you have been, like you have in Cyprus and IBM. I don't think the Sixth Circuit's that clear on how trial courts are to deal with non-mutual collateral estoppel. You are crystal clear on that subject. You have the factors. If the factors are shown, then it's up to the trial judge. You've given the trial judge factors to consider. And if, on review, it's an abuse of discretion standard to see if the trial court abused their discretion in deciding, assuming not to apply after that. You don't need to look to the Sixth Circuit on this issue because you don't have a gap on this subject in terms of the application of non-mutual. Now, when you apply it to arbitration, I think there's a tougher issue. That's my question. I do not think you should adopt that because I'm still not clear. If, in this case, it had been applied, and if, hypothetically, Hickox had been reversed, I'm not sure what my client's remedies would have been. We could not go back to the arbitrators. I think that's pretty clear. We would have had to go into Federal court. A lot of times people can't go back to the arbitrator. Pardon? A lot of times people can't go back to the arbitrator. So why not you sometimes, too? Well, but if the ‑‑ let's assume that the arbitration judgment had been confirmed simply because of all the reasons they're arguing. I've got a confirmed judgment. I then have the reversal of the basis of that judgment. What do I do? Oh well. That's the point. And that is why I can't agree with that because I think ‑‑ You're saying oh well to Mr. Cooper. Mr. Cooper? Oh, I'm sorry. No, I'm saying oh well to Mr. Cooper. You're sort of applying ‑‑ it applies to one side but not to you. No, I'm saying that because of the factors you and the Supreme Court have laid out that tell me that this is a perfect case where it should not have been applied. Thank you very much. Thank you very much for your argument. I have two principal points in rebuttal. Number one, if the arbitrators had said well, this was a wait and see situation, that's an area of explicit discretion of Parkland Notary. They didn't find that, nor could they. The record is clear. We told Judge Bolton there was no problem with doing a joint trial of the 30,000 share claim. That's in the record. The problem is that the other employment contract claims and the court denied consolidation but explicitly told the court that we would agree to it. Number two, Collins and Ryan was two months from its trial date when they moved to compel arbitration. Both cases were tightly tied in time. It's not like they were down the road in one but not down the road in the other. This was their explicit decision. Number three, the question of the Syverson v. IBM case, all the court said in that case was that the first court's decision as to certain plaintiffs was very specific to the facts of those plaintiffs in a different state, what they were told and what they were not told. It was an individual. That's not what we have here in the facts. We haven't discussed the collateral estoppel. But Parkland-Hosiery is the roadmap for how this Court applies collateral estoppel on appeal, even where the district court did not make any findings. It's very easy on the record, given what Judge Bolton said the evidence was, and how the damages were calculated. Kennedy. Now, Parkland-Hosiery determines that the district courts have discretion whether to apply this type of collateral estoppel. In four specific ways, none of which the arbitrators agreed to. On fairness.  No, no, no, Your Honor. They said there were four areas of unfairness that they could apply. For example, wait and see was one area. The second was multiple prior conflicting judgments. The third was where the first forum had lacked procedures that the second forum would have available. And there's a fourth one. None of them were kind of a generic, and anything else you think is unfair. There were four specific areas of discretion. One of them is, was not, if the first judgment is on appeal, it's okay to disregard it, whether you're a court or an arbitrator. That's – there's nothing having to do with finality. They were all very specific items that they called out. This is not an open-ended inquiry, whatever the court wants to do. Well, I think your time is up. Thank you both, counsel, for your excellent argument in this matter. This matter will now stand submitted.
judges: D.W. Nelson, Callahan, Bea